Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Maria De Los Angeles Trejo Grande, as an individual, and on behalf of all other class members,<br><br>    *Plaintiff*,<br><br>              v.<br><br>Kevin McAleenan, Acting Secretary of the United States Department of Homeland Security; Lee F. Cissna, Director of U.S. Citizenship and Immigration Services; Wallace Carroll, USCIS Houston Field Office Director,<br><br>    *Defendants*. | Case No. 4:19-cv-1806<br><br><br><br>Date: May 17, 2019 |

---

## CLASS ACTION COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a class action complaint for relief under the Administrative Procedure Act ("APA"). The Plaintiff, Maria De Los Angeles Trejo Grande, individually, and on behalf of all other Class members herein,[1] files the instant complaint against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the Department of Homeland Security ("DHS"), violated the APA when it administratively closed Plaintiff's I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), based on alleged lack of jurisdiction. *See* Exhibit 1.

Specifically, the USCIS, in determining that Plaintiff was an alien in removal proceedings and not an "arriving alien" with a final, executed order of removal, acted arbitrarily, capriciously, and erred as a matter of law. *Id.*

Plaintiff seeks *de novo* review of the USCIS's final agency decision; seeks a declaratory judgement that the USCIS has jurisdiction to adjudicate the I-485 Application and that it acted arbitrarily, capriciously and not in accordance with the law when it administratively closed said I-485 Application; and seeks relief under the APA to compel the USCIS to recalendar and to adjudicate her I-485 Application

---

[1] The following are identified members of the Class that are included in this Complaint: Manuel De Jesus Arevalo Hernandez, Francisco Garcia Galdamez, Jose Nicolas Beltran Echeverria, Doris Gomez, Victor Andres Garay, Jose Turcios, Fredy Diaz, Leonel Barrera Rosales, Lusia Castillo, Maria Nativi Privado, Betty Ayala-Gomez, Ninfa Guerrero, Manuel Flores, Jose Lopez, Fidel Angel Quintanilla, Liliana Melara, and Daisy Ayala.

on the merits.

The instant action is being filed against the following Defendants: Kevin McAleenan, in his official capacity as the Acting Secretary of the DHS; Lee F. Cissna, in his official capacity as the Director of the USCIS; and Wallace Carroll, in his official capacity as the Houston Field Office Director of the USCIS.

## I. INTRODUCTION

1.  It is well settled, as per the USCIS's own Policy Memorandum, the USCIS Policy Manual, the Code of Federal Regulations ("C.F.R.") and decisions of the Board of Immigration Appeals ("BIA"), that the USCIS retains sole and exclusive jurisdiction to adjudicate I-485 Applications filed by an "arriving aliens" with final, executed orders of removal. *See* Exhibit 2; USCIS Policy Manual Vol. 7, Part A, Ch. 3 § D; 8 C.F.R. §§ 245.2, 1245.2; *Matter of Yauri*, 25 I&N Dec. 103, 106-07 (BIA 2009).

2.  The findings of the USCIS that it lacked jurisdiction over Plaintiff's I-485 Application, despite the fact that Plaintiff is an "arriving alien," with a final, executed order of removal, runs contrary to its own Policy Memorandum and Policy Manual, the USCIS's previous actions in adjudicating similar adjustment of status applications, the federal regulations, and the BIA case law. As such, its decision is one that is arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Relief under the APA is thereby the proper remedy.

3

3.  Plaintiff seeks an order declaring that the final agency decision by the USCIS to administratively close Plaintiff's I-485 Application, on the grounds that it lacked jurisdiction, was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law.

4.  Additionally, Plaintiff seeks an order from this Court compelling the USCIS to recalendar and adjudicate her I-485 Application on the merits.

5.  Plaintiff has exhausted her remedies in this case and is not required to do anything further. The USCIS decision explicitly states that there is no appeal from its decision to administratively close Plaintiff's I-485 Application. *See* Exhibit 1. It is thus considered a "final" agency action subject to judicial review by this Court for which there can be no judicially-imposed exhaustion requirement. *Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704.

## II.  JURISDICTION AND VENUE

6.  This action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq.* Because this matter involves the federal laws of the United States, subject-matter jurisdiction is proper under 8 U.S.C. § 1331.

7.  8 U.S.C. §§ 1252(a)(5) and (g), which prevent an alien from attacking, or challenging the validity of, his or her final order of removal in a federal district

4

court, do not divest the Court of jurisdiction over this Complaint because Plaintiff's order of removal was already executed, and thus, the Secretary of DHS would not be prevented from executing the order, a fact that the USCIS itself has admitted. *See* Exhibits 7-8.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because all relevant actions, including the submission and administrative closure of Plaintiff's I-485 Application, as well as the I-485 Applications of all Class members, occurred in the USCIS's field office in Houston, Texas.

### III. PARTIES

9. Plaintiff, Maria De Los Angeles Trejo Grande, is a resident of Houston, Texas.

10. Class members Fidel Angel Quintanilla, Francisco Garcia Galdamez, Jose Nicolas Beltran Echeverria, Doris Gomez, Victor Andres Garay, Jose Turcios, Fredy Diaz, Leonel Barrera Rosales, Lusia Castillo, Maria Nativi Privado, Betty Ayala-Gomez, Ninfa Guerrero, Manuel Flores, Jose Lopez, Manuel De Jesus Arevalo-Hernandez, Liliana Melara, and Daisy Ayala, are also all residents of Houston, Texas or its metropolitan area.

11. Defendant, Kevin McAleenan, is the Acting Secretary of the DHS. He is sued in his official capacity. He may be served at 245 Murray Lane, SW, Mail Stop 0485, Washington, D.C. 20528.

12. Defendant, Lee F. Cissna, is the Director of the USCIS. He is sued in his official

capacity. He may be served at 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528.

13. Defendant, Wallace Carroll, is the USCIS Houston Field Office Director. He is sued in his official capacity. He may be served at 810 Gears Road, Suite 100, Houston, Texas 77067.

## IV.  STATUTORY AND REGULATORY BACKGROUND

14. Under 8 U.S.C. § 1255(a), an alien may adjust his or her status to that of a lawful permanent resident provided that: (1) the alien was inspected and admitted or paroled into the U.S.; (2) the alien makes such an application for adjustment of status; (3) the alien is eligible to receive an immigrant visa; (4) the alien is admissible to the U.S.; and (5) a visa is immediately available to him or her when the adjustment of status application is filed.

15. The USCIS has the jurisdiction to adjudicate an I-485 Application unless the immigration judge has jurisdiction. 8 C.F.R. § 1245.2(a)(1). 8 C.F.R. § 245.2(a)(1).

16. The immigration judge has exclusive jurisdiction to adjudicate any I-485 Applications if the alien is in removal or deportation proceedings (other than an arriving alien). 8 C.F.R. § 1245.2(a)(1).

17. An "arriving alien" is one who is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking

transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2. "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act." *Id.*

18. The immigration judge can only have jurisdiction over I-485 Applications filed by "arriving aliens" if: (1) the alien properly filed the application with the USCIS while the alien was in the U.S.; (2) the alien departed and returned to the U.S. pursuant to a grant of advance parole; (3) the application was denied by the USCIS; and (4) the DHS placed the alien in removal proceedings *after* the alien's return to the U.S. on advance parole or *after* the I-485 Application application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

19. If the USCIS administratively closes an I-485 Application on the grounds that it lacks jurisdiction to adjudicate it, the administrative closure would be considered the final agency action in the case. As such, no administrative remedies would be left available to an applicant and the only option is to judicially assert a violation under the APA. *See* 5 U.S.C. §§ 702, 704.

20. "Agency action" is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. 5 U.S.C. § 551(13).

21. The reviewing court is authorized to compel action by an agency, and hold its actions unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

## V.  FACTUAL BACKGROUND

22. Effective March 1, 2003, the DHS assumed responsibility for the functions of the agency formerly known as the "Immigration and Naturalization Service." The Secretary of DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

23. The USCIS is a bureau within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS is responsible for accepting and adjudicating all I-485 Applications, unless, as detailed above, jurisdiction lies with the immigration judge.

24. The USCIS Houston Field Office is an agency within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS Houston Field Office is the official agency with jurisdiction over the administrative closure of Plaintiff's I-485 Application, as well as the I-485 Applications of all Class members.

25. Plaintiff, Maria De Los Angeles Trejo Grande, is a native and citizen of El

Salvador. *See* Exhibit 3. She was ordered removed from the United States by an immigration judge on July 8, 1999. *See* Exhibit 1. On April 24, 2016, Plaintiff was granted advance parole (permission to travel) by the DHS based on her previous grant of Temporary Protected Status ("TPS"). *See* Exhibit 3. Plaintiff traveled on her grant of advance parole and was paroled into the United States on August 22, 2016. *Id.* On November 13, 2017, Plaintiff, after having an immediate relative visa petition filed on her behalf by a U.S. citizen, filed her I-485 Application with the USCIS. *See* Exhibit 1.

26. Instead of adjudicating Plaintiff's I-485 Application on the merits, however, the USCIS administratively closed it on the grounds that it lacked jurisdiction. *Id.* Specifically, the USCIS found that because Plaintiff had an outstanding order of removal entered against her, and her deportation proceedings were not terminated, Plaintiff returned to the status of an alien with TPS and an outstanding removal order when she was paroled into the United States on August 22, 2016. *Id.* As such, the USCIS determined that Plaintiff was not an "arriving alien." She therefore could not adjust her status with the USCIS, but could only do so through the immigration court. *Id.*

27. The Service's decision explicitly stated that there was no appeal from the administrative closure of Plaintiff's I-485 Application. *Id.*

28. At this time, Plaintiff cannot file to reopen her proceedings with the immigration

judge for the specific purpose of I-485 Application because she is an "arriving alien" and the immigration judge would lack jurisdiction over her I-485 application. *Matter of Yauri*, 25 I&N Dec. 103, 110-11.

29. Furthermore, Plaintiff has effectively executed her order of removal by travelling on an advanced parole and so, there is nothing for the immigration judge to reopen. *See* 8 U.S.C. § 1101(g); 8 C.F.R. § 1241.7.

30. Because there are no other forums or means available to Plaintiff to seek relief, she is filing the present action seeking relief under the APA with this Court.

31. Class member, Manuel De Jesus Arevalo Hernandez, is a native and citizen of El Salvador. He was ordered deported from the United States by an immigration judge on December 11, 2002. Mr. Hernandez was granted advance parole by the DHS based on his previous grant of TPS. He then traveled on his grant of advance parole and was paroled into the United States on March 12, 2010. On May 30, 2017, Mr. Hernandez, after having an immediate relative visa petition filed on his behalf, filed his I-485 Application with the USCIS. On April 20, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *See* Exhibit 9.

32. Class member, Fredy Diaz, is a native and citizen of El Salvador. He was ordered removed from the United States by an immigration judge on July 12, 1999. On November 3, 2015, Mr. Diaz was granted advance parole by the DHS based on

10

his previous grant of TPS. Mr. Diaz traveled on his grant of advance parole and was paroled into the United States on July 4, 2016. On October 17, 2016, after having an immediate relative visa petition filed on his behalf, Mr. Diaz filed his I-485 Application with the USCIS. On August 14, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

33. Class member, Leonel Barerra Rosales, is a native and citizen of El Salvador. He was ordered removed from the United States by an immigration judge on January 6, 1999. Mr. Rosales acquired advance parole pursuant to his TPS and on February 25, 2015, Mr. Rosales was paroled into the United States. On October 11, 2016, after having an immediate relative visa petition filed on his behalf, Mr. Rosales filed his I-485 Application with the USCIS. On February 5, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

34. Class member, Luisa Sangster, is a native and citizen of Honduras. She was ordered deported from the United States by an immigration judge on October 20, 1992. Ms. Sangster was granted advance parole by the DHS based on her previous grant of TPS. She then traveled on her grant of advance parole and was paroled into the United States on June 16, 2016. On July 31, 2017, after having an immediate relative visa petition filed on her behalf, Ms. Sangster filed her I-485 Application with the USCIS. On March 1, 2019, the USCIS administratively

closed the I-485 Application based on lack of jurisdiction. *Id.*

35. Class member, Doris Elizabeth Gomez, is a native and citizen of Honduras. She was ordered removed from the United States by an immigration judge on June 29, 1998. Ms. Gomez was granted advance parole by the DHS based on her previous grant of TPS. She then traveled on her grant of advance parole and was paroled into the United States on December 31, 2014. On February 11, 2015, after having an immediate relative visa petition filed on her behalf, Ms. Gomez filed her I-485 Application with the USCIS. On April 18, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

36. Class member, Jose Turcios, is a native and citizen of El Salvador. He was ordered deported from the United States by an immigration judge on December 4, 1989. On April 4, 2014, Mr. Turcios was granted advance parole by the DHS based on his previous grant of TPS. He then traveled on his grant of advance parole and was paroled into the United States on November 13, 2014. On December 27, 2016, after having an immediate relative visa petition filed on his behalf, Mr. Turcios filed his I-485 Application with the USCIS. On October 26, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

37. Class member, Jose Beltran Echeverria, is a native and citizen of El Salvador. He was ordered removed from the United States by an immigration judge on

February 17, 1998. On March 29, 2017, Mr. Echeverria was granted advance parole by the DHS based on his previous grant of TPS. Mr. Echeverria traveled on his grant of advance parole and was paroled into the United States on April 8, 2017. On May 5, 2017, after having an immediate relative visa petition filed on his behalf by a U.S. citizen, Mr. Echeverria filed his I-485 Application with the USCIS. On March 28, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

38. Class member, Francisco Garcia Galdamez, is a native and citizen of El Salvador. He was ordered removed from the United States by an immigration judge on December 4, 2000. On March 4, 2014, Mr. Galdamez was granted advance parole by the DHS based on his previous grant of TPS. Mr. Galdamez traveled on his grant of advance parole and was paroled into the United States on March 24, 2014. On July 21, 2014 after having an immediate relative visa petition filed on his behalf, Mr. Galdamez filed his I-485 Application with the USCIS. On April 12, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

39. Class member, Betty Ayala Gomez, is a native and citizen of El Salvador. She was ordered deported from the United States by an immigration judge on October 1, 1996. On March 28, 2016, Ms. Gomez was granted advance parole by the DHS based on her previous grant of TPS. She then traveled on her grant

13

of advance parole and was paroled into the United States on June 12, 2016. On November 21, 2016, after having an immediate relative visa petition filed on her behalf, Ms. Gomez filed her I-485 Application with the USCIS. On June 22, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

40. Class member, Victor Andres Garay, is a native and citizen of El Salvador. He was ordered deported from the United States by an immigration judge on May 15, 1990. On December 21, 2015, Mr. Garay was granted advance parole by the DHS based on his previous grant of TPS. Mr. Garay then traveled on his grant of advance parole and was paroled into the United States on January 27, 2016. On May 28, 2016, Mr. Garay, after having an immediate relative visa petition filed on his behalf, filed his I-485 Application with the USCIS. On January 30, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

41. Class member, Lilian Melara Escobar, is a native and citizen of El Salvador. She was ordered deported from the United States by an immigration judge on October 5, 1994. On April 3, 2017, Ms. Escobar was granted advance parole by the DHS based on her previous grant of TPS. Ms. Escobar then traveled on her grant of advance parole and was paroled into the United States on May 19, 2017. On June 19, 2017, Ms. Escobar, after having an immediate relative visa petition

14

filed on her behalf, filed her I-485 Application with the USCIS. On January 31, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

42. Class member, Jose Amilcar Lopez Ramirez, is a native and citizen of El Salvador. He was granted voluntary departure from the United States by an immigration judge on May 9, 1997. Because he did not voluntarily depart the United States prior to his voluntary departure date, the voluntary departure order automatically converted into a final order of removal. On December 23, 2015, Mr. Ramirez was granted advance parole by the DHS based on his previous grant of TPS. Mr. Ramirez traveled on his grant of advance parole and was paroled into the United States on March 26, 2016. On May 26, 2016, Mr. Ramirez, after having an immediate relative visa petition filed on his behalf, filed his I-485 Application with the USCIS. On May 10, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

43. Class member, Fidel Angel Quintanilla, is a native and citizen of El Salvador. He was ordered removed from the United States by an immigration judge on August 1, 2000. On November 9, 2017, Mr. Quintanilla was granted advance parole by the DHS based on his previous grant of TPS. Mr. Quintanilla traveled on his grant of advance parole and was paroled into the United States on November 26, 2017. *Id.* On December 21, 2017, after having an immediate

relative visa petition filed on his behalf, Mr. Quintanilla filed his I-485 Application with the USCIS. On May 1, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

44. Class member, Manuel De Jesus Flores Rosales, is a native and citizen of El Salvador. He was ordered deported from the United States by an immigration judge on December 25, 1983. On May 22, 2017, Mr. Rosales was granted advance parole by the DHS based on his previous grant of TPS. Mr. Rosales then traveled on his grant of advance parole and was paroled into the United States on June 16, 2017. On October 10, 2017, Mr. Rosales, after having an immediate relative visa petition filed on his behalf, filed his I-485 Application with the USCIS. On November 7, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

45. Class member, Maria Nativi Privado, is a native and citizen of Honduras. She was ordered deported from the United States by an immigration judge on October 29, 1991. On June 2, 2016, Ms. Privado was granted advance parole by the DHS based on her previous grant of TPS. Ms. Privado then traveled on her grant of advance parole and was paroled into the United States on June 28, 2016. On April 7, 2017, Ms. Privado, after having an immediate relative visa petition filed on her behalf, filed her I-485 Application with the USCIS. On November

8, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

46. Class member, Ninfa Suyapa Guerro, is a native and citizen of Honduras. She was ordered removed from the United States by an immigration judge on February 19, 1998. On June 10, 2016, Ms. Guerro was granted advance parole by the DHS based on her previous grant of TPS. Ms. Guerro then traveled on her grant of advance parole and was paroled into the United States on October 30, 2016. On June 19, 2017, Ms. Guerro, after having an immediate relative visa petition filed on her behalf, filed her I-485 Application with the USCIS. On April 27, 2018, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

47. Class member, Daisi Ayala, is a native and citizen of El Salvador. She was ordered removed by an immigration judge on April 7, 2004. Ms. Ayala was granted advance parole by the DHS based on her previous grant of TPS. She then traveled on her advance parole and was paroled into the United States on November 26, 2017. On December 29, 2017, Ms. Ayala, after having an immediate relative petition filed on her behalf, filed her I-485 Application with the USCIS. On May 1, 2019, the USCIS administratively closed the I-485 Application based on lack of jurisdiction. *Id.*

48. Just like with Plaintiff, there are no other forums or means available to the

members of the Class to seek relief. Therefore, they are joining Plaintiff's complaint seeking relief under the APA with this Court.

## CLASS ACTION ALLEGATIONS

49. Plaintiff incorporates by reference the allegations in paragraphs 1-48.

50. Plaintiff herein, along with the other idenitified Class members, brings this action on behalf of herself and all others who are similarly situated pursuant to Federal Rules of Civil Procedure ("FRCP") 23(a) and 23(b)(2).

51. As noted above, the Class consists of individuals who have had their I-485 Applications administratively closed by the USCIS based on an incorrect finding of lack of jurisdiction. Excluded from the Class are Defendants named herein and the Agencies for which they work. Likewise excluded from the class is any judge or judicial officer presiding over this matter and any members of their family and judicial staff.

52. Class certification is appropriate because this action involves questions of law and fact common to the class, the class is so numerous that joinder of all members is impractical, the claims of the Plaintiff are typical of the claims of the class, the Plaintiff will fairly and adequately protect the interests of the class, and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief is appropriate with respect to the class as a whole. *See* FRCP 23(a).

53. With respect to numerosity, a "plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

54. The number of actual class members is not the determinative question, as "[t]he proper focus (under Rule 23(a)(1)) is not on the numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981).

55. In determining whether joinder of members is impracticable, a court may consider "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

56. A class consisting of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992)).

57. At present, as noted above, Plaintiff has identified 19 Class members.[2] However,

---

[2] In addition to the above-named Class members, Plaintiff's counsel is currently representing several other Class members in complaints that were filed with the U.S. District Court for the Southern District of Texas and appeals that were filed with the Fifth Circuit Court of Appeals. The following Class members' cases are pending in the District Court: 4:18-cv-04514; 4:18-cv-02164; 4:18-cv-02169; 4:18-cv-02887; 4:18-cv-03664; 4:18-cv-03996; 4:19-cv-00027. The following Class members' cases are pending on appeal with the Fifth Circuit: 18-20784; 19-20213; 19-

the precise number of potential Class members is not known by Plaintiff at this time, and Plaintiff has no way of communicating with those members. In fact, the exact size can only be determined once Plaintiff is afforded proper discovery by the Court, because Defendants are in the best position to identify such persons. Upon further discovery, members of the Class may be easily identified through the USCIS records and may be provided notice via mail or publication.

58. Furthermore, Plaintiff believes that, upon discovery, the Class will reach a number that would raise the presumption that joinder is impracticable. As a result, a class action is superior to all other available methods for the fair and efficient adjudication of this matter.

59. With respect to commonality, the test is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

60. In this case, individual Plaintiff and already identified Class members, seek to represent the following nationwide class that, as demonstrated by the factual pattern of all Class members, have the following questions of law and fact in common:

---

20268; 19-20290; 19-20297. All of these Class members share the exact same factual pattern and issues that are raised in this complaint. As such, they will all be considered members of the class, if it is certified.

a. Whether the Class members are considered "arriving aliens" after they traveled on advance parole pursuant to their grant of TPS;

b. Whether the Class members' orders of removal/deportation were executed upon their departure on advance parole from the United States;

c. Whether the USCIS has jurisdiction over the Class members' I-485 Applications because they are "arriving aliens;"

d. Whether the USCIS has acted arbitrarily, capriciously, and not in accordance with the law when it administratively closed the Class members' I-485 Applications;

e. Whether the USCIS has departed from its current policy (stated in the USCIS's Policy Manual) of adjudicating I-485 Applications on the merits for "arriving aliens,"

f. Whether the members of the Class have been aggrieved or otherwise been legally wronged by the USCIS's decision to administratively close their cases.

61. Given the aforementioned common issues of law and fact, Plaintiff maintains that commonality has been met in this case.

62. Similar to commonality, the test for typicality is not demanding and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the

theories of those whom they purport to represent." *Lightborn*, 118 F.3d at 426.

63. Here, Plaintiff's claim is typical for the claims of all Class members because, as noted above, each member has been similarly affected by the USCIS's arbitrary, capricious, and legally erroneous action of administratively closing their I-485 Applications.

64. Lastly, with respect to adequate and fair representation of the class, a named plaintiff is only rendered an inadequate representative if the differences between the named plaintiff and class members creates a conflict between the named plaintiff's and class members' interests. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

65. In this case, Plaintiff affirms that she will adequately and fairly protect the interests of the members of the Class, as she has been legally wronged by the USCIS, just like all other Class members have been, and she has retained competent counsel to remedy that wrong.

66. Furthermore, Plaintiff has no interests that are unethical or in conflict with other members of the Class. Accordingly, she maintains that she will be a fair and adequate representative of the Class.

67. Finally, Defendants have acted on grounds generally applicable to the proposed class, thereby making appropriate final declaratory relief is proper with respect to the entire class.

68. Having satisfied the requirements under Rule 23(a), Plaintiff will now address how the proposed Class also satisfies the requirements of Rule 23(b)(3).

69. Under Rule 23(b)(3), a class action can be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority)."

70. Relevant to the Rule 23(b) requirements are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

71. The members of the Class, because they share the same legal wrong committed against them by the USCIS, will have no interest in individually controlling the prosecution or defense of separate actions.

72. As noted above, some Class members have already begun litigation in this forum. Plaintiff's counsel will, if permitted by the Court, join those pending cases with this one and add those plaintiffs to the Class membership rather than pursuing cases individually. Such an action will be in the interests of judicial

economy and efficiency, as well as in the interests of the Class members.

73. Because the Class members' cases are identical to each other, in that they share the exact same questions of law and fact, they have a strong desire and interest that litigation be concentrated in one forum.

74. Further, there will be no difficulty, on the part of Plaintiff and her counsel, in managing a class action complaint, as said counsel has extensive experience involving complex immigration law issues.

75. In sum, Plaintiff moves that the proposed Class, having met all the requirements under Rule 23(a) and (b)(3), be certified by this Court.

## VI.    CLAIMS FOR RELIEF

76. Plaintiff incorporates by reference the allegations in paragraphs 1-75.

77. Plaintiff contends that under the APA, the USCIS's administrative closure of her I-485 Application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

78. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be

24

governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'"); *Encino Motorcars v. Navarro*, 136 S. Ct. 2117, 2125-28 (2016) (finding null and void a rule where the agency failed to provide good reasons for changing its rule including at least "displaying awareness that it is changing position" and "show there are good reasons for the [new] policy"); *see also Wong Wing Hang v. INS*, 360 F.2d 715, 718-19 (2d Cir. 1996) (finding that an agency abuses its discretion when it inexplicably departs from prior procedures).

79. In this case, the exhibits attached herein establish that the USCIS has departed from its own settled course of adjudication (as stated in its Policy Manual) in administratively closing Plaintiff's I-485 Application because it has, and still does, issue denials or grants on I-485 Applications for aliens who have traveled pursuant to a grant of advance parole and who had final removal orders. *See* Exhibits 4-8.

80. The matter in Exhibit 4, just like Plaintiff's case, demonstrates that the alien was ordered deported, was granted TPS, traveled on advance parole pursuant to the grant of TPS, returned to the U.S., applied for adjustment of status, and was granted such status.

81. Likewise, Exhibit 5 evidences that the alien's I-485 Application was adjudicated

and granted by the USCIS, after he traveled on advance parole, despite the alien being deported and entering the country illegally.

82. The same scenario occurred with the applicant in Exhibit 6, in that case the USCIS granted an I-485 Application and accorded lawful permanent resident status to the individual who travelled on advance parole and returned, despite the fact that the individual was previously ordered deported.

83. Further, Exhibit 7 establishes that the USCIS adjudicated the I-485 Application but denied it because the applicant failed to file the appropriate Form I-212 with the application. In its decision, the USCIS explicitly stated that it concurred the applicant was an "arriving alien" with an executed order of removal and that the USCIS had jurisdiction to adjudicate his I-485 Application. *Id.*

84. Similarly, in Plaintiff's Exhibit 8, the USCIS issued a decision denying the I-485 Application because the alien did not file a Form I-212. The USCIS contended that this form was needed because the alien executed his order of removal when he traveled on advance parole.

85. In Plaintiff's case, despite her being "arriving alien" and executing her order of removal when she departed, the USCIS refused to adjudicate her I-485 Application on the merits. The USCIS has thus denied its statutory and obligatory jurisdiction and has irrationally departed from its correct and settled course of adjudication. As such, it has acted arbitrarily, capriciously, and abused

its discretion.

86. In addition, the USCIS's administrative closure of Plaintiff's I-485 Application is not in accordance with the law.

87. The applicable federal regulations and the BIA state that the USCIS has jurisdiction to adjudicate an I-485 Application filed by an arriving alien. *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1); *Matter of Yauri*, 25 I&N Dec. at 106-07 ("DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien…[m]oreover, we emphasize that the existence of a final order of removal does not preclude the USCIS from granting I-485 Application to an arriving alien who is otherwise eligible for I-485 Application.").

88. A an "[a]rriving alien [is] an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

89. A person who is paroled into the United States would be considered an "arriving alien" because while they are allowed to enter, they are not considered admitted into the United States. *See* 8 U.S.C. §§ 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 22 I&N Dec. 19 (BIA 1998) (holding that an alien who enters the

United States with a grant of parole is an arriving alien).

90. "An arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked."). 8 C.F.R. § 1.2.

91. In this case, Plaintiff is an "arriving alien" because she traveled and then returned to the U.S. at a port-of-entry as an applicant for admission pursuant to her grant of advance parole. *See* Exhibit 3.

92. Inexplicably, the USCIS contended that even though Plaintiff traveled on advance parole, she is not considered an "arriving alien" because her removal proceedings have not been terminated and when she returned to the U.S., she reverted back to the status of an alien with TPS and an outstanding order of removal. *See* Exhibit 1. This conclusion is erroneous as a matter of law for several reasons.

93. First and foremost, Plaintiff does not have an unexecuted order of deportation, because said order was fully executed when she departed the country on her advance parole. 8 U.S.C. § 1101(g) ("…any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law"); *see also*, 8 C.F.R. § 1241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be

considered to have been deported, excluded and deported, or removed."); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57, 58 (BIA 2009) (affirming that an alien's departure from the United States while under an outstanding order of deportation has the effect of executing the deportation order and bringing finality to the deportation proceedings).

94. As noted in the attached exhibits, the USCIS even concedes that an alien who departs on advance parole is considered to have executed his or her removal order. *See* Exhibits 7-8. Accordingly, any assertion by the USCIS stating that Plaintiff's order of removal remains unexecuted is legally and factually erroneous based on the Agency's own conclusions.

95. Second, notwithstanding the fact that the Miscellaneous and Technical Immigration and Naturalization Amendments ("MTINA") states an alien who has TPS and travels on parole returns in the *same status* that the alien had prior to such travel, an alien with TPS and a final order of removal is not a status under any provision of the INA. Given this fact, Plaintiff could not travel and be "inspected and admitted in the same immigration status" when she had no such status to begin with. Therefore, any citation to the MTINA to support the proposition that Plaintiff is not an "arriving alien" is erroneous as a matter of law.

96. Finally, Plaintiff is not able to file her I-485 Application and seek status as a

lawful permanent resident before the immigration court.

97. The immigration judge only has jurisdiction over an "arriving alien's" I-485 Application if the alien: (1) properly filed the application with the USCIS while the alien was in the United States; (2) departed and returned to the United States pursuant to a grant of advance parole; (3) the application was denied by the USCIS; *and* (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the I-485 Application was denied. *See* 8 C.F.R. § 1245.2(a)(1)(ii).

98. While Plaintiff meets the first two requirements, she fails the others because: she has not received a denial decision from the USCIS (only an administrative closure); and she was placed in removal proceedings *well before* she returned to the U.S. on advance parole and *before* she filed her I-485 Application. *See* Exhibits 1 and 3. As such, the exception allowing the immigration judge to exercise jurisdiction over Plaintiff's I-485 Application is inapplicable, and by finding otherwise, the USCIS erred as a matter of law.

99. In sum, given the law and evidence presented, Plaintiff maintains that judicial review under the APA is proper in this case because the USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

## VII.  EXHAUSTION

100.   Plaintiff incorporates by reference the allegations in paragraphs 1-99.

101.   As noted above, Plaintiff is not required to exhaust her administrative remedies with respect to the administrative closure of her I-485 Application because she is contesting a "final" agency action that is subject to judicial review under the APA.

102.   The Class members are also not required to exhaust their administrative remedies with respect to the administrative closure of their I-485 Applications because they, just like Plaintiff, are contesting a "final" agency action that is subject to judicial review under the APA.

103.   The language of 5 U.S.C. § 704 states that an agency action is "final" without regard to whether an alien seeks reconsideration or appeal to a higher agency authority, *unless* there is a statute or regulation that requires the alien to file an appeal and the agency action is inoperative during the appeal.

104.   In this case, just as in *Darby*, there is no statute or regulation requiring that Plaintiff exhausts remedies prior to seeking judicial review under the APA. In fact, the USCIS decision in Plaintiff's matter clearly states that there is no appeal from this decision. *See* Exhibit 1. Therefore, when the USCIS issued its decision to administratively close Plaintiff's I-485 Application, it was a "final" agency action for purposes of the APA. *See Darby*, 509 U.S. at 137. As such, there can be no judicially-imposed exhaustion requirement and judicial review is proper

31

before this Court.

## VIII. CONCLUSION

105. For the aforementioned reasons, the decision to administratively close Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Judicial review by this Court is therefore warranted under the APA.

## IX. PRAYER FOR RELIEF

106. Wherefore, Plaintiff, individually, and on behalf of all other Class members similarly situated, respectfully requests that this Court:

    a. issue an order certifying Plaintiff's Class, appointing Plaintiff as the representative of that Class, and designating Plaintiff's counsel as the counsel for the Class;

    b. Accept jurisdiction and venue as proper;

    c. Issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application, and Class members' applications, was arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

    d. Issue a declaratory judgment that the USCIS has jurisdiction to adjudicate Plaintiff's and other Class members' I-485 Applications;

    e. issue an order under the APA to compel the USCIS to recalendar and adjudicate Plaintiff's and other Class members' I-485 Applications;

    f. grant reasonable attorney's fees, expenses, and costs of court pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

    g. grant Plaintiff and the members of the Class any and all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*s/ Raed Gonzalez*
_____

Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: 713-481-3040
Fax: 713-588-8683
rgonzalez@gonzalezolivierillc.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Maria De Los Angeles Trejo Grande, as an individual, and on behalf of all other class members,<br><br>     *Plaintiff*,<br><br>           v.<br><br>Kevin McAleenan, Acting Secretary of the United States Department of Homeland Security; Lee F. Cissna, Director of U.S. Citizenship and Immigration Services; Wallace Carroll, USCIS Houston Field Office Director,<br><br>     *Defendants.* | Case No. 4:19-cv-1806<br><br><br><br><br><br>Date: May 17, 2019 |

---

## INDEX OF EXHIBITS

---

- Exhibit 1—Notice of Administrative Closure for Maria De Los Angeles Trejo Grande

- Exhibit 2—USCIS Policy Memorandum

- Exhibit 3—Parole Authorization for Maria De Los Angeles Trejo Grande

- Exhibit 4—I-485 Application Decision 1

- Exhibit 5—I-485 Application Decision 2

- Exhibit 6—I-485 Application Decision 3

34

- Exhibit 7—I-485 Application Decision 4

- Exhibit 8—I-485 Application Decision 5

- Exhibit 9—Notices of Administrative Closure for Class Members